```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MINNESOTA
                     Civil No. 16-834(DSD/SER)
```

John Ekblad,

       Plaintiff,

v.                                                   **ORDER**

Independent School District
No. 625, et al.,

       Defendants.

      Philip G. Villaume, Esq., Jeffrey D. Schiek, Esq. and
      Villaume & Schiek, P.A., 2051 Killebrew Dr., Suite 611,
      Bloomington, MN 55425, counsel for plaintiff.

      Hannah G. Felix, Esq., Lawrence M. Rocheford, Esq. and
      Jardine Logan & O'Brien PLLP, 8519 Eagle Point Blvd., Suite
      100, Lake Elmo, MN 55042, counsel for defendants.


This matter is before the court upon the motion for summary judgment by defendants Independent School District No. 625, school district superintendent Valeria Silva, and assistant superintendent Theresa Battle. After a review of the file, record, and proceedings herein, and for the following reasons, the court grants the motion.


**BACKGROUND**

This dispute arises out of the physical assault of plaintiff John Ekblad by a student at Central Senior High School (CSHS). Ekblad has been a physical science teacher at CSHS since approximately 2011. Ekblad Dep. at 60:8-21. At various times

throughout his tenure, Ekblad served as a lunchroom supervisor and safety team member.[1] Id. at 115:22-116:6. He also coached various athletic teams and assisted with site supervision and security at athletic events. Id. at 118:12-15. Relevant here, Ekblad was a lunchroom supervisor for the 2014-15 school year, for which he received additional compensation. Id. at 133:22-134:16, 135:5-8. In that role, he monitored students and helped maintain order by, among other things, telling students not to fight and, occasionally, intervening to break up fights. Id. at 133:22-134:7, 231:16-232:8. The school district did not require Ekblad to intervene in fights, however, and it could not discipline him for failing to do so. Silva Dep. at 52:21-54:13; Mackabee Dep. at 32:22-34:15. But the school district instructs teachers to intervene to restore safety if they feel they can do so safely. Mackabee Dep. at 34:9-15; Battle Dep. at 122:13-123:14; Krois Dep. at 64:2-8.

On December 4, 2015, a fight broke out between students – F.S.O. and F.L.O. – during the lunch period Ekblad was supervising. A support staff member called Ekblad over to intervene, and when he did so, he was seriously injured by F.S.O. Ekblad Dep. at 178:19-179:6; Villaume Aff. Ex. I, at 10-12. Ekblad concedes that he was

---

[1] The safety team implemented safety protocols and addressed safety concerns at CSHS. Krois Dep. at 11:29-12:8. As a safety team member, Ekblad carried a radio and responded to safety concerns in the high school. Id. at 14:16-18.

"on the job, on the clock working" for the school district when he was assaulted. Ekblad Dep. at 194:9-16. During and after the incident, F.S.O. made aggressive comments, including that he "slamm[ed] that white-ass teacher." Villaume Aff. Ex. E.

Ekblad had no contact with F.S.O. - in or outside of school - before the incident. See Ekblad Dep. at 144:45 ("I don't recall ever knowing him. I couldn't pick him out of a lineup."). He acknowledges that he was not specifically targeted in the incident and that there is no indication that F.S.O. personally bore him any ill will. Id. at 148:3-149:2, 151:23-152:3, 158:23-159:2; see also Krois Dep. at 51:22-23 (agreeing that it "could have happened to anyone"). There is no evidence in the record that F.S.O. had been violent at school prior to the incident.

Ekblad has received workers' compensation benefits since the incident, including disability payments and vocational rehabilitation benefits. Polzin Decl. ¶¶ 3-4, 7. The school district has paid, and continues to pay, his medical bills. Id. ¶¶ 8-9.

On March 1, 2016, Ekblad filed suit against defendants in Ramsey County District Court. Ekblad alleges negligence and negligent supervision by the school district and violations of 42 U.S.C. § 1983 by Silva and Battle. Ekblad contends that defendants failed to protect him despite knowing that there were serious safety concerns at CSHS. Defendants timely removed to this court

3

and now move for summary judgment.

**DISCUSSION**

**I.  Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. Id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. Celotex, 477 U.S. at 324. A party asserting that a genuine dispute exists – or cannot exist – about a material fact must cite "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). If a plaintiff cannot support each essential element of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Celotex, 477 U.S. at 322-23.

4

## II. Workers Compensation Act

Defendants argue that Ekblad's negligence claims are preempted by the Workers' Compensation Act (WCA). The court agrees.

"Minnesota's workers' compensation system 'is based on a mutual renunciation of common law rights and defenses by employers and employees alike.'" Meintsma v. Loram Maint. of Way, Inc., 684 N.W.2d 434, 438 (Minn. 2004) (quoting Minn. Stat. § 176.001). The WCA is the exclusive remedy for an employee who suffers a job-related personal injury. Minn. Stat. § 176.031. "The exclusive remedy provision is part of the quid pro quo of the workers' compensation scheme in which the employer assumes liability for work-related injuries without fault in exchange for being relieved of liability for certain kinds of actions and the prospect of large damage verdicts." Meintsma, 684 N.W.2d at 438 (internal quotation marks and citation omitted). "Where the WCA provides an employee's exclusive remedy, a court lacks subject-matter jurisdiction over any claim seeking redress for the employee's injuries." Edralin v. Bon Appetit Mgmt. Co., No. 06-2119, 2006 WL 2850345, at *2 (D. Minn. Oct. 3, 2006).

There are three relevant exceptions to the exclusive remedy provision: the assault exception, the intentional act exception, and the co-employee liability exception. Ekblad has failed to establish that any of the exceptions apply in this case.

**A.   The Assault Exception**

The assault exception excludes from WCA coverage any injury inflicted "to injure the employee because of personal reasons." Minn. Stat. § 176.011, subdiv. 16.  To fall within this exception, the assault must arise from personal circumstances entirely unrelated to the victim's employment.  See, e.g., McGowan v. Our Savior's Lutheran Church, 527 N.W.2d 830, 834 (Minn. 1995) (holding that the rape of a homeless shelter employee by a shelter client in the workplace during work hours did not fall within the assault exception).  Ekblad acknowledges that he was injured while at work and in the course of his duties, but argues that he was assaulted because he is white, which qualifies as a "personal reason."  But racial animosity, even if proven, is insufficient to establish the personal connection necessary to invoke the exclusion.  See Fu v. Owens, 622 F.3d 880, 833 (8th Cir. 2010) (holding that the WCA covered plaintiff's injuries despite evidence of racial animus because the assault occurred due to work-related tension between the parties).  Further, F.S.O.'s comment that he "slamm[ed] that white-ass teacher" not only references Ekblad's race, but also his role at the school, thereby reinforcing the connection between the assault and Ekblad's employment.  Ekblad otherwise presents no evidence of a personal relationship between him and F.S.O. which could support a finding of non-work related animus.

Ekblad also argues that there is no connection between his employment and the assault because anyone could have been a victim of the assault, even a visitor to the school. It is likely beyond dispute that if a visitor to the school had intervened in the fight, his or her injuries would not be covered by the WCA. But those are not the facts presented. Ekblad, a school district employee paid to maintain order and safety in the lunchroom, intervened in the fight in the course of his duties. Under these circumstances, his injuries arose from circumstances directly related to his employment.[2] McGowan, 527 N.W.2d at 834. As a result, the assault exception does not apply.

**B. Intentional Act Exception**

The intentional act exception bars WCA coverage when the employer harbored a "conscious and deliberate intent directed to the purpose of inflicting an injury, and such injury may not be inferred from mere negligence, though it be gross." Gunderson v. Harrington, 632 N.W.2d 695, 702 (Minn. 2001) (quoting Breimhorst v. Beckman, 35 N.W.2d 719, 730 (Minn. 1949)). Ekblad sets forth a detailed analysis as to why defendants' policies regarding student discipline and school safety were either misguided, not followed,

---

[2] Even though Ekblad was not required to intervene in the fight, he acted within the scope of employment when he exercised discretion in intervening.

or both and ultimately led to his injuries.[3]  See Pl.'s Opp'n Mem. at 5-12, 15-25.  But defendants' policies - even if substandard or ineffective - do not establish that they consciously and deliberately intended to inflict injury.  As a result, the intentional act exception does not apply.

**C. Co-Employee Liability Exception**

The co-employee liability exception applies where an employee has a personal duty to another employee, "the breach of which resulted in the employee's injury, and th[e] activity causing the injury was not part of the co-employee's general administrative responsibilities."  Wicken v. Morris, 527 N.W.2d 95, 98 (Minn. 1995).  "[T]he injury must arise from gross negligence on the part of the co-employee."  Id.  "The acts of negligence for which a co-employee may be held liable must be acts constituting direct negligence toward the plaintiff, tortious acts in which he participated, or which he specifically directed others to do."  Stringer v. Minn. Vikings Football Club, LLC, 705 N.W.2d 746, 756 (Minn. 2005).

Here, even assuming Silva and Battle are Ekblad's co-employees, the incident did not arise from negligence directed toward Ekblad or tortious conduct in which they participated, nor did it occur at their direction.  Ekblad nevertheless argues that

---

[3] There is no dispute that student violence against staff was a serious problem in the school district before the incident.  See Villaume Aff. Ex. L.

the exception should apply because Silva and Battle were obligated to maintain a safe workplace. But the duty to provide a safe workplace is a "non-delegable" duty held by the employer:

> This is a fundamental premise upon which the workers' compensation laws are based. The seemingly harsh result of holding a co-employee immune from liability arising from breach of the employer's duty to provide a safe workplace is a necessary part of the statutory scheme, as it maintains the integrity of the compromise between employers and employees implemented by the legislature pursuant to Minn. Stat. § 176.061, subd. 5(c).

Wicken, 527 N.W.2d at 99. As a result, the co-employee liability exception does not apply under these circumstances.

Because the WCA applies, summary judgment is warranted on Ekblad's negligence claims.[4]

**III. Section 1983 Claims**

Ekblad asserts claims under 42 U.S.C. § 1983 against Silva and Battle based on their alleged failure to maintain a safe workplace. Section 1983 is not an independent source of rights, and a successful claim must demonstrate a deprivation of a specific right, privilege, or immunity. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). Although Ekblad identified no specific constitutional rights in his complaint, he now alleges that his unsafe workplace violated his right to substantive due process under the Fourteenth Amendment. Even if his new allegations were timely, they are meritless.

---

[4] The court need not consider whether defendants are entitled to immunity in light of the foregoing analysis.

To plead a substantive due process claim, Ekblad must allege actions by Silva and Battle which "violated one or more fundamental constitutional rights" and were "shocking to the contemporary conscience." C.N. v. Willmar Pub. Sch., Indep. Sch. Dist. No. 347, 591 F.3d 624, 634 (8th Cir. 2010) (quoting Flowers v. City of Minneapolis, 478 F.3d 869, 873 (8th Cir. 2007)). This is a high standard because

> [s]ubstantive due process is concerned with violations of personal rights ... so severe ... so disproportionate to the need presented, and ... so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to brutal and inhumane abuse of official power literally shocking to the conscience.

Id. (quoting Golden v. Anders, 324 F.3d 650, 652-53 (8th Cir. 2003)). The circumstances presented, while certainly unfortunate, do not meet this standard. As a result, summary judgment is also warranted on Ekblad's § 1983 claims.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1. The motion to for summary judgment [ECF No. 39] is granted; and

2. The case is dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: May 25, 2017

                                        s/David S. Doty
                                        David S. Doty, Judge
                                        United States District Court